IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jaimie Hileman, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. 3:17-CV-165 |
| | ) |
| Internet Wines & Spirits Co. d/b/a Randall's | ) |
| Wine & Spirits and George Randall, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### I. Jurisdiction and Venue

1. This court has jurisdiction over Count I based on 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights) as this is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").

2. This court has jurisdiction over Counts II and III based on 28 U.S.C. § 1367 (supplementary jurisdiction) as the claims in Count II and III are so related to the claim in Count I as to form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f).

4. Plaintiff has fulfilled all conditions precedent under Title VII and the MHRA prior to filing this lawsuit and has otherwise exhausted her administrative remedies.

### II. Parties

5. Plaintiff Jaimie Hileman is a citizen of the State of Illinois.

6. Defendant Internet Wines & Spirits Co. d/b/a Randall's Wine & Spirits ("IWS") is an Illinois corporation with its principal place of business in Fairview Heights, Illinois.

7. At all relevant times, IWS has continuously had at least 15 employees and is an employer within the meaning of Title VII and the Missouri Human Rights Act, RSMo 213.010, et seq. ("MHRA").

8. Defendant George Randall "(Randall")", at all material times, has been IWS's president and, upon information and belief, has been IWS's sole shareholder.

### III. Common Allegations

#### A. Hileman Engages in Protected Activity Under Title VII and the MHRA

9. Hileman worked for IWS from October 2011 to March 2015.

10. In August 2013 and in December 2013, Hileman filed Charges of Discrimination in which she named IWS as a Respondent and described the conduct of George Randall. The two Charges are attached hereto and incorporated herein as part of Exhibit 1, as pp. 17 and 18.

    A. Hileman alleged IWS and Randall discriminated against her when she told them she planned to transition to female and that following her announcement, Randall told her she was creating a huge risk of exposure for the company, began criticizing her performance, and demoted her.

    B. In her second Charge, Hileman alleged additional retaliation, including a description of an incident in which Randall backed Hileman, who used a cane to walk, up and came within five inches of Hileman's face, yelling that Hileman "picked the wrong guy to fight, he would never stop, he never loses." **Exhibit 1, p. 18.**

2

11. Plaintiff filed suit against defendants based on the 2013 EEOC/MCHR Charges in December 2014 in the U.S. District Court for the Southern District of Illinois (14-cv-1400), making claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Missouri Human Rights Act. RSMo 213.010, et seq. **Exhibit 1, p. 8.** Hileman filed a First Amended Complaint in February 2015. **Exhibit 1, p. 21.**

12. At a March 2015 settlement conference, the parties reached an agreement to resolve the Title VII and MHRA case, which called for Hileman's separation ("Settlement Agreement").

### B. News Report

13. On November 12, 2015, Fox2 News aired a news report relating to the transgender community ("news report"). The news report consisted of reporter Mandy Murphey narrating a story from the studio and periodically cutting to taped interviews. Hileman appeared in the news report on tape only.

   A. After Murphey narrated that Hileman notified a boss that she (Hileman) was transitioning, Hileman described the notification in a taped portion of the news report. In a narration portion of the news story, Murphey stated, "Jaimie was fired not long thereafter." When the news report cut to Hileman on tape, Hileman did not state she was fired. Hileman stated, "They did not react well, and within two months it distinctly affected my job status and resulted in discrimination litigation."

   B. Hileman notified IWS she was transitioning at the end of April 2013; IWS demoted Hileman from Operations Manager to Store Manager on August 1, 2013 (**Exhibit 1, p. 17**); and, the demotion resulted in discrimination litigation. **Exhibit 1, p. 8, ¶ 1 (discussion of demotion).**

    C.   At no time during the news report was IWS identified as Hileman's employer.

    D.   At no time during the news report did Hileman state she was fired.

    E.   As a result of the litigation, Hileman no longer worked for IWS.

14. On November 13, 2015, through counsel, defendants demanded Hileman cause the news story be removed from Fox2 News's website. In the letter, IWS's counsel noted Hileman stated only that she had worked as "a successful executive in the wine and spirits industry" and did not accuse anyone of naming IWS in the news story.

15. Upon information and belief, the news report was removed from Fox2's website in November 2015.

### C.  IWS's Original Complaint in Circuit Court

16. On February 8, 2016, defendant IWS filed a three-count Complaint against Hileman in the Circuit Court for St. Clair County (**Exhibit 1, with all attachments except Settlement Agreement, Exhibit C, which was placed under seal in the Circuit Court**), for:

    A.   Breach of Contract (Count I), specifically that Hileman breached the Non-Disparagement Clause of the Settlement Agreement by falsely reporting that she was "fired" from IWS (**Exhibit 1, p. 4, ¶ 23**) even though:

        i. Hileman did not state in the news report she was fired;

        ii. No one named IWS in the news report, contrary to ¶ 19 of IWS's Complaint. **Exhibit 1, ¶ 19.**

        iii. IWS alleged it lost profits as a result of Hileman's alleged breach, with no knowledge that it lost any profits as a result of Hileman's alleged breach.

B. Defamation Per Se (Count II) which, under Illinois law, requires that the defendant identify the plaintiff, i.e., IWS, in her alleged defamatory statement.

    i. At ¶ 19, IWS alleged that Mandy Murphey named IWS in the news story, stating: "During the segment, Murphey reported that Defendant Hileman was 'fired' from her job with IWS as a result of transgender discrimination." **Exhibit 1, ¶ 19**

    ii. IWS knew ¶ 19 was false when it made the allegation because Murphey did not name IWS in the news report.

C. Defamation Per Quod (Count III) which, under Illinois law, requires the plaintiff to plead and prove special damages.

    i. IWS did not plead special damages. **Exhibit 1, Count III.**

    ii. IWS misrepresented the law to the Court, stating, "The statements made are so obviously and naturally harmful to IWS that a showing of special damages is not necessary to the action herein." **Exhibit 1, ¶ 43.**

### D. IWS's First Amended Complaint

17. In June 2016, IWS filed a First Amended Complaint. **Exhibit 2 (without attachments).**

    A. Count I of IWS's First Amended Complaint was again for IWS's claim that Hileman breached the Non-Disparagement Clause in which IWS alleged Hileman "materially breached the terms of the Settlement Agreement by falsely reporting she was 'fired' from IWS." **Exhibit 2, ¶ 24.**

        i. IWS knew Hileman did not state she was fired.

        ii. IWS knew no one identified IWS in the news report and yet repeated the false alle-

gation that Murphey named IWS in the news report. **Exhibit 2, ¶ 19.**

    iii. IWS alleged it lost profits with no knowledge that it had any lost profits as a result of any alleged breach by Hileman.

    B.   Count II of IWS's First Amended Complaint was again Defamation Per Se, requiring identification of the defamed party. IWS repeated the false allegation that IWS was named in the news report to avoid dismissal. **Exhibit 2, ¶ 19.**

    C.   Count III of IWS's First Amended Complaint was again for Defamation Per Quod. IWS misrepresented the law to the Circuit Court, stating, "The statements made are so obviously and naturally harmful to IWS that a showing of special damages is not necessary to the action herein," despite its knowledge that under Illinois law special damages must be pled and proven in a Defamation Per Quod claim. **Exhibit 2, p. 7, ¶ 49.**

### E.   St. Clair County Circuit Court Sanctions IWS

18.  On August 9, 2016, the Circuit Court entered an order relating to Hileman's March 2016 discovery requests, ordering IWS to comply by September 12, 2016. **Exhibit 3.** IWS failed to comply with the Order by September 12, 2016.

19. On November 2, 2016, the St. Clair County Circuit Court sanctioned IWS for failing to comply with the August 9, 2016 Order and ruled on a motion to dismiss:

    A.   Dismissing Counts II and III and part of Count I;

    B.   Reserving ruling on IWS's Count I claim for lost profits until sanctions were resolved; and,

    C.   Staying further action until IWS came into compliance with the August 9, 2016 Order,

giving IWS until January 4, 2017 to come into compliance. **Exhibit 4.**

20. When IWS partially complied with the August 9, 2016 discovery Order, IWS admitted it had no knowledge of any damage attributable to Hileman's alleged breach of contract.

    A.   IWS admitted having no knowledge of any person whose view of its reputation changed as a result of Hileman's alleged breach of contract. **Exhibit 5, Int. 8.**

    B.   IWS had already admitted to never conducting surveys, marketing studies, and/or other analysis of public and/or consumer attitudes towards IWS during the relevant period. **Exhibit 5, Int. 6.**

21. Prior to the entry of sanctions, Hileman asked IWS to admit its name was never mentioned in the news report. IWS stated it could not truthfully admit or deny same. **Exhibit 6, 7.**

### F.   Charge Filing and Notices of Right to Sue

22. Plaintiff filed a timely Charge of Discrimination with the EEOC and MCHR in which she alleged IWS and George Randall retaliated against her for opposing discrimination and filing a lawsuit against them under Title VII and the MHRA. **Exhibit 8.**

23. The EEOC issued a Notice of Right to Sue in connection with said Charge on January 11, 2017 (**Exhibit 9**) and the MCHR issued a Notice of Right to Sue in connection with said Charge on January 20, 2017 (**Exhibit 10**).

24. This lawsuit was filed within 90 days of the issuance of said Notices.

## Count I
## Retaliation Under Title VII

25. Hileman incorporates Paragraphs 1 - 24 as though fully set forth herein.

26. IWS, in suing Hileman based on false statements of the law and false statements of fact, has kept this lawsuit in court for more than a year, in retaliation for plaintiff having engaged in protected activity under Title VII. This type of conduct would discourage a person from complaining or supporting a Charge of Discrimination.

27. IWS's retaliation against plaintiff for engaging in protected activity violates Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3.

28. As a direct and proximate result of defendant IWS's unlawful conduct, Hileman has been damaged in that she has suffered embarrassment, inconvenience, humiliation, loss of enjoyment of life, and a chilling of the exercise of her rights.

29. Defendant's violation of Title VII has been wilful, wanton, and malicious or in reckless disregard of Hileman's federally protected rights.

WHEREFORE, Hileman asks for judgment in her favor and against defendant IWS in an amount to be established at trial for compensatory and punitive damages as well as attorneys' fees, costs, and such further relief as the court deems appropriate under the circumstances including enjoining IWS from retaliating against persons who pursue claims of discrimination.

## Count II
## MHRA Retaliation by IWS

30. Plaintiff incorporates Paragraphs 1- 24 as though fully set forth herein.

31. IWS retaliated or discriminated against Hileman by filing the St. Clair County lawsuit

against her and continuing to pursue such lawsuit in the manner described herein because Hileman opposed discrimination under the MHRA, filed Charges of Discrimination, and filed an MHRA lawsuit against IWS, in violation of RSMo 213.070.

32. Defendant IWS's conduct has been and continues to be willful and malicious or in reckless disregard of Hileman's rights under the MHRA.

33. As a direct and proximate result of Defendant IWS's conduct, Hileman has been damaged in that Hileman has suffered embarrassment, inconvenience, humiliation, loss of enjoyment of life, and a deprivation of her civil rights.

WHEREFORE, Hileman asks for judgment in her favor and against defendant IWS in an amount to be established at trial for compensatory and punitive damages. Hileman also prays for attorneys' fees, costs, and such further relief as the court deems appropriate under the circumstances, including enjoining IWS from retaliating against persons who pursue claims of discrimination.

## Count III
## MHRA Retaliation by George Randall

34. Plaintiff incorporates Paragraphs 1-24 as though fully set forth herein.

35. Defendant Randall retaliated or discriminated against Hileman by directing the filing of the St. Clair County lawsuit against her and directing the continuance of such lawsuit in the manner described herein because Hileman opposed discrimination under the MHRA, filed Charges of Discrimination, and filed an MHRA lawsuit against IWS, in violation of RSMo 213.070.

36. Defendant Randall's conduct has been and continues to be willful and malicious or in

reckless disregard of Hileman's rights under the MHRA.

37. As a direct and proximate result of Defendant Randall's conduct, Hileman has been damaged in that Hileman has suffered embarrassment, humiliation, inconvenience, loss of enjoyment of life, and a deprivation of her civil rights.

WHEREFORE, Hileman asks for judgment in her favor and against Randall in an amount to be established at trial for compensatory and punitive damages. Hileman also prays for attorneys' fees, costs, and such further relief as the court deems appropriate under the circumstances enjoining Randall from retaliating against persons who pursue claims of discrimination.

/s/Ferne P. Wolf
Sowers & Wolf, LLC
D. Eric Sowers
es@sowerswolf.com
Ferne P. Wolf
fw@sowerswolf.com
Joshua M. Pierson
jp@sowerswolf.com
530 Maryville Centre Drive, Suite 460
St. Louis, MO 63141
314 744-4010/314 744-4026 fax